UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW A. CEJAS, | CASE NO. 1:11-cv-02141-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND |
| v. | (ECF No. 1) |
| R H TRIMBLE, et. al., | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

Plaintiff Andrew A. Cejas ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 7.)

Plaintiff initiated this action on December 28, 2011. (ECF No. 1.) No other parties have appeared. Plaintiff's Complaint is now before the Court for screening.

I. **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ____ U.S. ____, ____, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II.   SECTION 1983 CLAIMS

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

## III.   PLAINTIFF'S COMPLAINT

As an initial matter, the Court finds that Plaintiff's Complaint does not meet the Fed. R. Civ. P. 8(a)(2) requirement that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

**Plaintiff's complaint is over one hundred handwritten pages long.** His factual allegations alone encompass forty pages. His innumerable legal causes take up another

forty pages. He purports to sue some forty-four defendants in this action. He appears to seek relief for every single perceived wrongdoing encountered by him at Pleasant Valley State Prison and the manner in which every single grievance he has filed for such perceived wrongs has been handled. The only apparent factor common to all claims is Plaintiff; otherwise they are generally unrelated to one another.

A cursory review of the Complaint satisfies the Court that it does not comply with the pleading requirements in any way which would allow the Court to determine if it contains hidden within it a cognizable cause of action. Moreover, given the demands imposed on this Court by the tremendous volume of such cases and its other civil, criminal and habeas corpus case load, it would be neither practical nor fair to other litigants for the Court to spend the time necessary to go through this inordinately lengthy document to try to extract an identifiable, potentially cognizable claim, identify the facts, if any, related thereto and identify which Defendant(s) could possibly be held to answer for it. Instead, based upon its review and identification of the various possible causes of action suggested, the Court will set out pleading standards applicable to each. Plaintiff will then be given the opportunity to replead in **"a short and plain statement"** a claim which meets those standards. Plaintiff will be required in that amended complaint to assert only **related** claims against only those Defendants who may credibly be alleged to be responsible for the facts giving rise to those claims. Facts unrelated to those claims will not be permitted. Claims not related to the single set or series of facts giving rise to those claims will not be permitted. Further, this Court can envision few claims which would need more than twenty pages to set them out. Thus, any amended filing which is longer than twenty pages will be viewed with great skepticism and may be rejected on that basis alone. Moreover, any filing which does not comply with these instructions directing a short and plain statement or any filing which combines unrelated matters or defendants likely will result in **dismissal with prejudice of the entire action.**

**IV.   LEGAL CLAIMS**

    **A.   Federal Rule of Civil Procedure 18(a)**

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

### B.    Linkage Requirement

Under section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

### C. Possible Claims

Plaintiff's Complaint could be read as alleging claims regarding retaliation, inability to exhaust administrative remedies, inadequate medical care, excessive force, denial of vegetarian meals, restrictions on practice of his religion, an unwillingness to accommodate

his disabilities, and due process violations. The Court will set out the legal criteria applicable to proper pleading such claims.

### 1. First Amendment - Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

With respect to the third prong, filing a grievance is protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts

would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

### 2. First Amendment - Access to the Courts

Prisoners have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). This right is essentially limited to direct criminal appeals, habeas petitions and civil rights actions pursuant to 42 U.S.C. § 1983. Id., at 354. To establish a violation of his constitutional right to court access, plaintiff must show an "actual injury." Id., at 349. The high court held that before a denial of access to the courts claim can go forward, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id., at 351–53, 355.

### 3. First Amendment - Religion

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir.

1999) (en banc).

If Plaintiff is being denied access to all outlets for religious worship, he may have a First Amendment claim. See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). However, prisons are allowed to place a variety of restrictions on religious worship for security purposes and other legitimate penological reasons. Id.

          4.        Eighth Amendment - Conditions of Confinement

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31, (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

"To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' occurring through 'deliberate indifference' by prison personnel or officers." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). However, temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern, 45 F.3d 1310 (9th Cir. 1995).

          5.        Eighth Amendment - Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### 6. Eighth Amendment - Excessive Force

The analysis of an excessive force claim brought pursuant to Section 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as the Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The

1  malicious and sadistic use of force to cause harm always violates contemporary standards
2  of decency, regardless of whether or not significant injury is evident. Hudson v. McMillian,
3  503 U.S. 1, 9 (1992); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth
4  Amendment excessive force standard examines de minimis uses of force, not de minimis
5  injuries). However, not "every malevolent touch by a prison guard gives rise to a federal
6  cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and
7  unusual punishments necessarily excludes from constitutional recognition de minimis uses
8  of physical force, provided that the use of force is not of a sort repugnant to the conscience
9  of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

10  Whether force used by prison officials was excessive is determined by inquiring if the
11  "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and
12  sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for
13  application of force; the relationship between that need and the amount of force applied;
14  the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as
15  reasonably perceived by prison officials; and any efforts made to temper the severity of the
16  response. See Whitley, 475 U.S. at 321. The absence of significant injury alone is not
17  dispositive of a claim of excessive force. See Wilkens v. Gaddy, ___ U.S. ___, ___, 130
18  S.Ct. 1175, 1176-77 (2010).

19         7.     Fourteenth Amendment - Due Process Claim

20  The Due Process Clause protects prisoners from being deprived of property without
21  due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a
22  protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th
23  Cir.1974). However, while an authorized, intentional deprivation of property is actionable
24  under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n. 13 (1984)
25  (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754
26  F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations
27  of property by a governmental employee "constitute a violation of the procedural
28  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post

deprivation remedy for the loss is available," Hudson, 468 U.S. at 533; see also Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991) ("Although Hudson involved § 1983 and the Fourteenth Amendment, the same due process principles apply to the federal government through the Fifth Amendment.").

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 90 P.3d 116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 13 Cal.Rptr.3d 534, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

### 8. Due Process - Grievance Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640. This was

reiterated in Ramirez v. Galarza, 334 F.3d 850 (9th Cir. 2003), when the Ninth Circuit observed that inmates do not have a separate constitutional entitlement to a grievance procedure. Thus, the case law is clear that Plaintiff is not entitled, as a matter of federal law, to a particular grievance procedure.

### 9. Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1). Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995 (internal quotations omitted). It "must impose a significantly great restriction or onus upon [religious] exercise." Id. (quotations omitted). A substantial burden includes situations " 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief." Id.

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

### 10. Americans With Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability,

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pa. Dep't. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

> To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo County, 609 F.3d 1011, 1021 (9th Cir .2010) (citing McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)).  "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

"To recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)).

### V.     CONCLUSION AND ORDER

Accordingly, it is HEREBY ORDERED that:

1.     Plaintiff's Complaint is dismissed;

2.     Plaintiff is granted **thirty (30) days** from the date of service of this order to file an amended complaint that should be no longer than **twenty (20) pages** in length and **shall not combine unrelated facts or Defendants**; the amended complaint must comply with the requirements of the Civil Rights Act, the

        Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in dismissal of this action without prejudice; and

4.     If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

As an initial matter, the Court finds that Plaintiff's Complaint does not meet the Fed. R. Civ. P. 8(a)(2) requirement that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

IT IS SO ORDERED.

Dated:   May 28, 2012          /s/ *Michael J. Seng*
                                       UNITED STATES MAGISTRATE JUDGE